# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

ALLEN YOUNG,                       )
                                   )
   Petitioner,              )
                                   )
v.                                 )  Nos: 3:02-CR-078
                                   )     3:08-CV-302
UNITED STATES OF AMERICA,          )    (VARLAN/SHIRLEY)
                                   )
   Respondent.              )

## MEMORANDUM

This is a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C.

§ 2255 filed by petitioner Allen Young ("petitioner"). The government has filed its response

to the § 2255 motion and petitioner has filed his reply to the response. Petitioner has also

filed two motions to amend his § 2255 motion. The motions to amend will be **DENIED**. For

the following reasons, the § 2255 motion will be **DENIED** and this action will be

**DISMISSED**.

## I. Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "there

has been such a denial or infringement of the constitutional rights of the prisoner as to render

the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255,

petitioner "must show a 'fundamental defect which inherently results in a complete

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer, and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.     Factual Background

Petitioner was a member of the Knoxville, Tennessee, branch of a crack gang known as the Vice Lords. He was convicted by a jury of the following: conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture of substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one of a second superseding indictment); aiding and abetting the possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c) and 2 (count two); and felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) (count seven). Petitioner was acquitted of possession with intent to distribute cocaine hydrochloride (count five) and possession of a firearm in furtherance of a drug trafficking offense (count six). He was sentenced to a term of imprisonment of 360 months on the conspiracy conviction, a consecutive term of 60 months on the aiding and abetting conviction, and a

term of 120 months on the felon in possession conviction, to be served concurrently with the other terms of conviction, for a total effective sentence of 420 months.

Petitioner's convictions were affirmed on direct appeal, but the case was remanded for resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Young*, 158 F. App'x 651 (6th Cir. November 15, 2005). Petitioner received the same sentence on remand, which was affirmed. *United States v. Young*, 239 F. App'x 162 (6th Cir. August 7, 2007). In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel; he also alleges that his sentence was imposed in violation of the Constitution.

## III. Discussion

### A. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective

3

standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges 16 specific claims of ineffective assistance of trial counsel and two claims of ineffective assistance of appellate counsel, as paraphrased by the Court as follows. The Court will consider each of the claims in turn.

### 1. Counsel failed to move for a severance.

Petitioner was tried with co-defendants Walter Williams and Michael Smith. He alleges his attorney should have filed a motion to sever his trial from that of his co-defendants. Petitioner claims that evidence of drug activities and violence did not involve him and that the presentation of such evidence against his co-defendants prejudiced his defense.

4

"'[T]he general rule in conspiracy cases is that persons jointly indicted should be tried together and that this is particularly true where the offenses charged may be established against all of the defendants by the same evidence and which result from the same series of acts.'" *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir. 1988) (quoting *United States v. Dye*, 508 F.2d 1226 (6th Cir. 1974)).

> A showing that a defendant would have a better chance of acquittal in a separate trial does not establish prejudice requiring severance. To show enough prejudice to require severance, a defendant must establish "substantial prejudice," "undue prejudice," or "compelling prejudice."
>
> Generally, persons indicted together should be tried together. Where the same evidence is admissible against all defendants, a severance should not be granted. However, severance is not required if some evidence is admissible against some defendants and not others. A defendant is not entitled to severance because the proof is greater against a co-defendant. Nor is a defendant entitled to a severance because a co-defendant has a criminal record.
>
> Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately. Neither does a difference in trial strategies mandate separate trials. The burden is on defendants to show that an antagonistic defense would present a conflict "so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

*United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) (quoting *United States v. Davis*, 623 F.2d 188, 194-95 (1st Cir. 1980)) (internal citations omitted). *See also Zafiro v. United States*, 506 U.S. 534, 537-40 (1993); *United States v. Breinig*, 70 F.3d 850, 852-53 (6th Cir. 1995); *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993).

If a defendant can establish that he would be prejudiced by a joint trial, "the district court may, in its discretion, grant separate trials." *United States v. Gibbs*, 182 F.3d 408, 434

(6th Cir. 1999) (citing Fed. R. Crim. P. 14). The federal court system, however, prefers joint trials because they promote efficiency and avoid inconsistent verdicts. *Zafiro v. United States*, 506 U.S. at 537. For that reason, a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

Petitioner does not articulate any particular trial right that was compromised by the joint trial. The Sixth Circuit gave a brief summary of the evidence against the defendants as follows:

> Defendants were arrested in 2002 for their participation in a crack cocaine conspiracy linked to the Knoxville branch of the Vice Lords gang. The government launched an investigation in 2001 after residents of a housing project in Knoxville complained about the gang. After a former member turned informant, agents obtained authorization to set up video surveillance of the gang's regular meeting place. Although Williams did not attend meetings because he was incarcerated, Young and Smith appeared in the resulting videotapes. In the course of its investigation, the government executed search warrants at the residences of both Young and Edward Howell, another member of the conspiracy. Drug trafficking equipment, cash, and firearms were recovered during these searches.

> Numerous arrests resulted from these investigations. Pursuant to plea agreements, several defendants testified at trial. Jahmal Tory, who lived with Young, testified that he, Williams, John Cotner, and Vincent Brown founded the Knoxville branch of the Vice Lords in 1999 and sought to secure a crack cocaine monopoly in the area. As the gang grew, most members supported themselves by selling crack. Gang members on occasion pooled their money in order to purchase large quantities of crack from suppliers. Members attempted to buy cocaine from each other as much as possible to "keep the money in the Nation." The gang collected a stash of firearms, at least some of which were stored at Smith's residence.

6

Among other things, the gang's weekly meetings entailed the collection of dues. The undercover videotapes depicted gang members identifying themselves at meetings by their street aliases and their rank in the gang. They also discussed drug trafficking and acquisition of firearms. On one videotape, Smith suggested a new "pat down" security measure for the meeting place.

In recorded telephone conversations, Young and Williams talked about expanding their drug trafficking to other housing projects. Videotapes also showed that Tory asked Williams to sell drugs in North Carolina, and that members made an initial, failed attempt to do so.

Witnesses described four violent drug-related incidents involving the gang. First, Smith shot Terry Moore when gang members tried to collect a drug debt. Second, gang member Jedaryll Chandler attempted to shoot Brian Whitman for not paying his gang "dues." Third, Williams and Chandler committed an armed robbery of a cocaine supplier. Fourth, Edwin Hyman, and Young, tried to shoot David Benton for acting as an informant while Smith served as the "look out."

After Smith was jailed, a fellow inmate reported that Smith attempted to enlist the inmate to go find Moore and convince Moore to lie about the shooting at trial. Another inmate testified that Smith told him to testify that Smith did not sell drugs.

*United States v. Young*, 158 F. App'x at 652-53.

Based upon the evidence at trial, petitioner was involved in all aspects of the gang's activities. For example, Jahmal Tory testified that petitioner was one of the gang members who obtained large quantities of cocaine; that petitioner was involved in trying to take over the sale of crack in another housing project, specifically Western Heights, and had carried guns in the projects; that petitioner sold crack from the house he shared with Tory; and that the police recovered a gun holster, ammunition, and scales for weighing drugs belonging to petitioner when their residence was searched. [Criminal Action No. 3:02-cr-78, Doc. 856,

Transcript of Trial Proceedings on December 1, 2003, pp. 386-87, 413-19, 449-50, 451-57, respectively].

Scott Wilson testified that petitioner was a member of the Vice Lords when he, Wilson, became a member; that he bought crack from petitioner, among others, and had been with petitioner when petitioner cooked powder cocaine into crack; and that petitioner was involved in planning the attempted execution of gang member David Benton, who was suspected of being a snitch. [Doc. 860, Transcript of Trial Proceedings on December 9, 2003, pp. 1150, 1152-53, 1156-60, respectively].

Charles Hardin also testified that petitioner was a member of the Vice Lords when he, Hardin, became a member and that petitioner went by the nickname "Capone;" that petitioner was one of the larger sources of cocaine that Hardin bought from and that they discussed setting up shop in Western Heights; that he had seen petitioner cook powder cocaine into crack; and that petitioner was involved in the plan to kill David Benton. [*Id*. at 1247-48, 1250-51, 1251-52, 1257-59, respectively].

Petitioner's claim that the evidence of drug activity and violence did not involve him is contradicted in the record. There was no basis for petitioner's attorney to have filed a motion for severance and counsel was not ineffective in failing to do so. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel). Petitioner is not entitled to relief on this claim.

## 2. Counsel failed to request a mental competency evaluation for petitioner.

Petitioner alleges his attorney should have asked for a competency hearing to determine that petitioner fully understood the nature of the proceedings against him. The standard for determining whether a defendant's competence should be evaluated is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402(1960)). There is nothing in the record to suggest that petitioner was not competent to stand trial.

In his Memorandum in support of the § 2255 motion, petitioner states he told counsel after trial and during sentencing that he required a mental evaluation. [Doc. 1007, Memorandum in Support of § 2255 Motion, p. 14]. During his initial sentencing, petitioner's attorney asked that petitioner receive a full mental evaluation as soon as he came into the custody of the Bureau of Prisons. [Doc. 834, Transcript of Proceedings on June 3, 2004, p. 27]. Petitioner then stated that he was on drugs while he was on the street. [*Id.*]. Petitioner made no reference to his need for a mental evaluation during his resentencing hearing; he did advise the court that since his incarceration he had completed the anger management class, had obtained his GED, and was taking college correspondence courses with a major in theology and a minor in business. [Doc. 928, Transcript of Proceedings on May 11, 2006, pp. 10-11].

There is nothing in the record to suggest that petitioner was not competent to stand trial. A court is only required to conduct a competency hearing where there is "substantial evidence of a defendant's incompetency." *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). There being no evidence of petitioner's incompetence, petitioner's counsel was not ineffective in failing to request a competency hearing.

### 3. Counsel failed to renew the request for disclosure of the identities of confidential informants.

Counsel filed a pretrial motion requesting disclosure of the identities of confidential informants that the government relied on in seeking authorization for electronic surveillance; the motion was denied. On appeal, the Sixth Circuit noted that "[b]ecause defendant did not renew his objection at trial, the standard of review is plain error. Plain error involves a legal error that is obvious and that affects substantial rights." *United States v. Young*, 158 F. App'x at 654 (internal citations omitted). The Sixth Circuit then declined to reverse the trial court's denial of disclosure, finding that petitioner failed "to demonstrate how not disclosing the informants affected the outcome of the proceedings." *Id*. Petitioner alleges counsel was ineffective in failing to renew the motion at trial.

The pretrial motion for disclosure was filed in connection with an attempt to suppress the electronic surveillance [Doc. 278, Motion for Disclosure] and was properly denied. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) (the Due Process Clause "has never been held to require the disclosure of an informant's identity at a suppression hearing"). To the extent the pretrial motion for disclosure was also a matter of trial preparation, a criminal

defendant is not entitled to know the identities of confidential witnesses who are not expected to testify at trial. *Id.*

Petitioner does not allege how knowing the identities of the informants would have assisted his defense or would have affected the outcome of the proceedings. As petitioner acknowledges, he was convicted based upon the testimony of his co-defendants. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 4. Counsel failed to cross-examine two government witnesses.

Petitioner alleges his attorney failed to cross-examine two cooperating witnesses, specifically William Gant and Michael Johnson. William Gant testified that petitioner was with Kenny when Gant sold drugs and that later he and Young had gotten into a verbal altercation. [Doc. 832, Transcript of Trial Proceedings on December 10, 2003, pp. 29-30]. Michael Johnson testified that he had seen petitioner once, but denied petitioner was present when he, Johnson, sold drugs. [*Id.* at 76]. Petitioner's attorney did not question either witness.

Petitioner claims counsel should have cross-examined Gant to establish that Gant had never seen petitioner sell drugs. He also claims that counsel should have cross-examined Johnson as to the capacity in which he knew petitioner. Given the brief testimony of the two witnesses, regarding petitioner, it would appear that the decision not to cross-examine the witnesses was trial strategy, which this Court will not second-guess. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

11

### 5. Counsel failed to investigate and subpoena witnesses to testify on petitioner's behalf.

Petitioner alleges that his attorney failed to investigate potential witnesses and then subpoena them to trial, specifically Tamera Clark, Pauline McDermont, and Vivian Jones. According to petitioner, these witnesses could have impeached the testimony of the government's witnesses with respect to petitioner's involvement in drugs, violence, and gang-related activities. He also alleges that, although Nitra Brabson was subpoenaed, she was not used as a defense witness. Petitioner does not state the manner in which these witnesses could have impeached the government's witnesses nor how they otherwise could have assisted the defense. Furthermore, in addition to the testimony of his co-defendants, petitioner was also convicted on the basis of the electronic surveillance evidence. Because petitioner has not shown that the testimony of Ms. Clark, Ms. McDermont, Ms. Jones, or Ms. Brabson would have affected the outcome of the proceedings, he has failed to demonstrate ineffective assistance of counsel in this regard.

### 6. Counsel failed to prepare alternative translations of taped recordings used at trial.

Petitioner claims that his attorney should have prepared alternative translations of taped recordings that were played for the jury by the government. According to petitioner, an alternative translation was required to provide the jury with his version of portions of the recordings that were inaudible and confusing. Petitioner does not identify, however, any errors in the government's transcripts and thus counsel was not ineffective in failing to prepare alternative translations.

### 7. Counsel failed to review taped recordings with petitioner for purposes of impeaching government witnesses.

Petitioner alleges that his attorney did not review the taped recordings with him in order to identify the participants and be prepared to cross-examine his co-defendants as to their identification of him. According to petitioner, he was convicted based upon the testimony of co-defendants who falsely identified him. This claim overlooks the fact that petitioner identified himself in the taped recordings. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 8. Counsel failed to play the entire taped recordings for the jury.

Petitioner alleges that, had the jury heard the conversations without interruptions instead of being forced to hear selected portions of the taped conversations that supported the government's case, the jury would have concluded that no conspiracy existed. There is nothing in the record to support this bald assertion and petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 9. Counsel failed to object to the government's method in disclosing cooperating witnesses.

Petitioner alleges that, during the course of the trial, the prosecutor provided counsel with the names of the testifying witnesses, along with a copy of disclosure materials, just prior to each witness taking the stand. According to petitioner, his attorney did not object to this method of disclosure which he claims was designed to prevent effective cross-examination of the witnesses.

13

The Sixth Circuit has held that the government is not required to provide the defense with a list of its witnesses prior to trial. *See United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993) (citing Fed. R. Crim. P. 16); *see also United States v. Davis*, 306 F.3d 398, 420 (6th Cir. 2002) ("Defendant fails to point to any authority for the proposition that the government was required pre-trial to disclose its witnesses."). Likewise, pursuant to the Jencks Act, 18 U.S.C. § 3500, the government is not required to provide the defense with a witness's statement until after the witness has testified on direct examination. *See United States v. Presser*, 844 F.2d 1275, 1283(6th Cir. 1988) ("the government may not be compelled to disclose Jencks Act material before trial"). Accordingly, any objection to the government's method would have been frivolous and counsel was not ineffective in failing to make such an objection.

> **10. Counsel failed to advise petitioner as to what pleas should be entered and failed to communicate to petitioner any plea offers by the government.**

Petitioner alleges his attorney failed to advise him as to what pleas should be entered and failed to communicate to petitioner any plea offers by the government. Petitioner also claims that counsel failed to pursue plea negotiations.

Without question, a criminal defendant is entitled to know if the government has made a plea offer. *See, e.g., Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) ("a defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance as a matter of law"); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986) (failure to inform a client of a plea offer "constitutes ineffective assistance of counsel under

14

the sixth and fourteenth amendments"); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3rd Cir. 1982) ("It would seem that, in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards.").

As an attachment to its response to the § 2255 motion, the government has filed the affidavit of David C. Jennings. [Doc. 1029, Attachment 1, Affidavit of David C. Jennings]. Mr. Jennings testifies that he is an Assistant United States Attorney and was responsible for prosecuting petitioner and his co-defendants. [*Id*. at 1]. Mr. Jennings states unequivocally as follows:

> There were no plea offers made by the government, and negotiations initiated by defendant's attorney would not have been entertained. The undersigned was fully aware of the defendant's violent criminal history and considered him to be a danger to the public. In addition, I reviewed the evidence in a Knox County, Tennessee homicide investigation in which Petitioner was a suspect. To my knowledge, Petitioner was never charged with that murder, but I believed, after reviewing the evidence, that Petitioner committed this murder. For these reasons, it was my intent to try Petitioner, convict him and seek the longest sentence possible for the safety of the public.

[*Id*. at 1-2].

Because the government had not made any plea offer, petitioner's attorney was not ineffective in failing to advise him concerning a plea offer. Likewise, because the government was not interested in negotiating a plea agreement with petitioner, counsel was not ineffective in failing to pursue plea negotiations with the government.

**11.  Counsel failed to advise petitioner about his right to testify and the benefits and consequences of testifying.**

Petitioner alleges in his Memorandum in support of the § 2255 motion that his attorney failed to advise him about his right to testify; in the same section he also alleges that, while he chose not to testify, his decision was not based on counsel's advice as to the benefits and consequences of testifying. [Doc. 1007, Memorandum in Support of § 2255 Motion, p. 27]. In his affidavit in support of the § 2255 motion, petitioner testifies that his attorney discussed with him his right to testify, but did not discuss the advantages and disadvantages of testifying. [Doc. 1010, Affidavit, p. 2, ¶ 13].

A criminal defendant has a "fundamental constitutional right" to testify in his own behalf, subject only to a knowing and voluntary waiver. *Rock v. Arkansas*, 483 U.S. 44, 53 n.10 (1987) (citations omitted). A claim that counsel failed to explain the benefits of testifying does not, however, state a claim of ineffective assistance of counsel. *See Walker v. United States*, No. 99-4105, 2000 WL 1871681 (6th Cir. 2000).

> The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant. Unaccompanied by coercion, however, legal advice concerning exercise of the right to testify infringes no right. Walker does not allege that he was unaware of his right to testify, that his attorney did not consult him about his decision whether or not to testify, or that his attorney intimidated him, threatened him, or otherwise interfered with his decision whether or not to testify. Rather, Walker merely asserts that counsel did not adequately advise him of the evidentiary value of his testimony. This assertion does not constitute a substantial showing that his defense counsel forbade him to testify. These allegations are insufficient to show that counsel's performance was in any way deficient.

*Id*. at *2 (internal citations omitted). Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 12. Counsel failed to investigate and prepare a viable defense.

Petitioner alleges that his attorney did not investigate and develop a defense, and did not call any witnesses or present any evidence in defense of petitioner. Petitioner does not, however, list any witnesses[1] or other evidence that would have rebutted the overwhelming evidence against him. Petitioner's defense, as well as that of his co-defendants, was that the Vice Lords were not involved in a drug conspiracy. Given the government's proof, this may have been the only viable defense available to the defendants. As petitioner himself admitted during sentencing, he did sell small quantities of drugs, but denied it was a conspiracy. [Doc. 834, Transcript of Proceedings on June 3, 2004, p. 27]. It is also worth noting also that petitioner's defense was successful in securing acquittal of two of the charges against him. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 13. Counsel failed to request a special verdict regarding drug quantity.

Petitioner alleges his attorney failed to request a special verdict regarding drug type and quantity, in compliance with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court considered an enhanced punishment for a firearm conviction under New Jersey's hate crime statute, and held: "Other than the fact of a prior conviction, any fact that

---

[1]In claim number five, petitioner lists four witnesses that he claims could have impeached the testimony of his co-defendants, but does not state what the substance of their testimony would have been.

17

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." *Id.* at 490.

In petitioner's case, the second superseding indictment charged him, *inter alia*, with conspiring to possess with intent to distribute 50 grams of crack cocaine. [Doc. 211, Second Superseding Indictment, Count One, pp. 2-3]. The jury found him guilty of count one of the superseding indictment. [Doc. 624, Verdict Form, pp. 1-2]. At the time of petitioner's conviction and sentencing, the offense carried a statutory maximum penalty of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(iii) (2006).

The Court determined that the conspiracy involved at least 1.5 kilograms of cocaine base, and that petitioner was accountable for that amount. [Doc. 928, Transcript of Proceedings on May 11, 2006, p. 12]. Because the Court's finding regarding drug quantity did not increase the applicable statutory maximum penalty, and because petitioner was sentenced to 360 months on that conviction, his sentence did not violate *Apprendi*. Counsel did not render ineffective assistance in failing to request a special verdict.

>    **14.   Counsel failed to object to the drug type and quantity for which petitioner was held accountable for and not found by the jury.**

In a related claim, petitioner alleges he was held responsible for drug quantities in excess of that charged in the indictment, to which counsel did not object. He again relies on *Apprendi*. For the reasons stated in the preceding section, petitioner has failed to demonstrate ineffective assistance of counsel in this regard. Additionally, the Court notes

that counsel did, in fact, object to petitioner' drug quantity determination. [Doc. 746, Objections to Presentence Report, p. 2, ¶¶ 10 and 11].

### 15. Counsel failed to file a motion for downward departure under the guidelines.

Petitioner alleges his attorney should have filed a motion for downward departure pursuant to U.S.S.G. § 4A1.3(b)(1), which provides: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." Petitioner's criminal history category, however, correctly assessed the seriousness of his criminal history.

Petitioner's criminal history category was initially determined to be IV, based upon 8 criminal history points, and was enhanced to VI because he is a career offender. U.S.S.G. §4B1.1(a) & (b). [Presentence Investigation Report, p. 24, ¶ 97]. The career offender status was based upon two prior violent felonies, specifically second degree burglary and armed robbery. [*Id*. ¶ 98]. In addition, the instant offense was committed less than two years after his release on the armed robbery conviction. [*Id*. ¶ 96].

Based upon petitioner's criminal history of violent felonies and his risk of recidivism, counsel was not ineffective in failing to file a motion for downward departure. *See United States v. Vasquez-Duarte*, 59 F. App'x 625, 629 (6th Cir. Feb. 12, 2003) ("Considering the evidence concerning appellant's criminal record, we cannot find that appellant was prejudiced by counsel's failure to request a downward departure from his criminal history category.

19

Appellant's criminal history includes convictions for serious offenses, and demonstrates a significant risk of recidivism.").

### 16. Appellate counsel failed to fully brief a meritorious issue.

This claim relates to petitioner's claim number three, regarding counsel's failure to renew the motion for disclosure of the identities of the confidential informants. For the reasons set forth in the discussion of claim number three, *supra*, petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

### 17. Appellate counsel was grossly ineffective on direct appeal following remand.

This claim relates to the appeal of petitioner's resentencing after remand in light of *Booker*. The Sixth Circuit first noted:

> We review a defendant's sentence for reasonableness, crediting a sentence within the Guidelines range with a presumption of reasonableness. Reasonableness encompasses both a substantive and a procedural component. "A sentence may be considered substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." Procedural reasonableness requires that the sentencing court adequately consider the § 3553(a) factors, including a correctly calculated Guidelines range.

*United States v. Young*, 239 F. App'x at 166 (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal quotations marks, brackets, and citation omitted)) (other internal citations omitted).

The Sixth Circuit then considered petitioner's sentence.

> Young confines his argument, quite literally, to four sentences:

20

> Under *Booker* the District Court had the ability to sentence Appellant to a sentence within the guideline range or outside of it. The District Court chose to sentence Appellant to a total of 420 months. Appellant believes that although he should be punished for the acts he committed, he believes that the District Court's sentence does not fit the crime. In essence Appellant believes that his sentence is unreasonable under *Booker*.
>
> This unusually terse argument implicates the rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." As we presume Young's within Guidelines-range sentence reasonable, and as Young makes no attempt to rebut this presumption, we affirm.

*Id*. (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir.1999)). Petitioner quotes the foregoing language from the Sixth Circuit's opinion to support his claim that counsel was ineffective on appeal after remand.

The district court sentenced petitioner to 420 months based upon the nature and circumstances of the offense, petitioner's criminal history and prior characteristics, consideration of the advisory guidelines, and the factors listed in 18 U.S.C. § 3553(a). [Doc. 928, Transcript of Proceedings on May 11, 2006, p. 12]. The Court found "that the advisory guideline range is reasonable and sufficient to reflect the seriousness of [petitioner's] offense and promote respect for the law and provide just punishment to protect the public from future crimes by [petitioner]." [*Id*. at 12-13].

Petitioner has made no showing that he suffered any prejudice from counsel's alleged deficient performance, nor does he allege that he would have succeeded on appeal had counsel made a stronger argument. Petitioner received a sentence which was at the lower end of the advisory guideline sentence range and he has presented no evidence to rebut the

presumption that his sentence was reasonable. Petitioner has failed to demonstrate ineffective assistance of counsel in this regard.

Based upon the foregoing, and with respect to his numerous claims of attorney error, petitioner has failed to demonstrate that he received ineffective assistance of counsel under either prong of the *Strickland* standard.

## B. Unconstitutional Sentence

Petitioner alleges that his enhanced sentence was based on prior state convictions that were entered in violation of the United States Constitution. According to petitioner, he has mounted a challenge to his prior convictions in the appropriate state courts.

In *Custis v. United States*, 511 U.S. 485 (1994), the Supreme Court held that neither 18 U.S.C. § 924(e) nor the Constitution permits a defendant to collaterally attack the validity of previous state convictions that are used to enhance his sentence under the Armed Career Criminal Act "with the sole exception of convictions obtained in violation of the right to counsel." *Id.* at 487. *See also United States v. Bureau*, 52 F.3d 584, 594 (6th Cir. 1995) ("Here, Bureau was represented by counsel in the proceedings related to his prior convictions and therefore cannot meet the Supreme Court's narrow exception."). Accordingly, a defendant cannot use a § 2255 proceeding to challenge the validity of prior state convictions that were used to enhance his federal sentence. *Smith v. United States*, 262 F.3d 537 (6th Cir. 2001); *Turner v. United States*, 183 F.3d 474 (6th Cir. 1999).

Petitioner concedes that he has not yet successfully challenged his prior state convictions but asks the Court for leave to litigate this claim after he has done so. To the

22

extent petitioner is asking the Court to stay these proceedings or to toll the statute of limitation as to this claim, the Court will do neither. The Court notes, however, that in *Johnson v. United States*, 544 U.S. 295 (2005), the Supreme Court held that notice to a federal prisoner of an order vacating his prior state conviction that was used to enhance the prisoner's federal sentence was a matter of fact under § 2255(f)(4), which could start a renewed one-year limitation period under § 2255, *provided* that the prisoner has shown due diligence in seeking the order of vacatur. *Id*. at 302 (emphasis added).

### C.     Motions to Amend

Petitioner's first motion to amend the § 2255 raises a claim under *United States v. Almany*, 598 F.3d 238 (6th Cir.), *vacated and remanded*, 131 S. Ct. 637 (2010). *Almany* was vacated and remanded in light of *Abbott v. United States*, 131 S. Ct. 18 (2010), and is no longer good law. *See United States v. Almany*, 626 F.3d 901 (2010). Accordingly, petitioner's first motion to amend the § 2255 will be **DENIED** as **MOOT**.

Petitioner has also filed a second motion to amend the § 2255 motion to state an additional claim of ineffective assistance of counsel, namely that counsel failed to file a motion to dismiss the indictment based upon a violation of the Speedy Trial Act. For the following reasons, the second motion to amend is time-barred and will be denied.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal prisoner has one year in which to file a § 2255 motion. The limitation period generally runs from the date on which the judgment of conviction becomes final. Because petitioner did not file a petition for a writ of certiorari, his judgment of conviction became final on November

23

5, 2007, which was the date on which the 90-day period for seeking certiorari review expired. *See Clay v. United States*, 537 U.S. 522, 525 (2003) ("a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction").

Petitioner timely filed his original § 2255 motion on August 4, 2008. [Doc. 1006]. The second motion to amend was filed on August 15, 2011. [Doc. 1105]. The question, then, is whether the motion to amend is timely because it "relates back" to the original filing date.

"An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 640 (2005). *See also Oleson v. United States*, 27 F. App'x 566, 571, 2001 WL 1631828 *3 (6th Cir. December 14, 2001) ("Oleson's amendment does not escape the AEDPA statute of limitations by 'relating back' to previous claims -- Oleson's amendment raises an entirely new argument").

Petitioner's second motion to amend raises a new claim of ineffective assistance of counsel which is unrelated to his original claims of ineffective assistance. His new allegation of ineffective assistance of counsel does not relate back to the original pleading, is time-barred, and will not be considered by the Court.

## IV. Conclusion

Petitioner's motions to amend will be **DENIED**. Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

25